**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **THE CHESAPEAKE BAY** | * | |
| **FOUNDATION, INC.,** *et al.*, | | |
| | * | |
| **Plaintiffs,** | | |
| | * | |
| **v.** | | **Case No.: PWG-11-47** |
| | * | |
| **WEYERHAEUSER CO.,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Approximately fifteen years ago, the parties entered into various agreements governing the construction of new headquarters for Plaintiff Chesapeake Bay Foundation, Inc. ("CBF"), which included use of columns and beams that Defendants Weyerhaeuser Co. f/d/b/a Trus Joist MacMillan and Weyerhaeuser NR Co. f/d/b/a Trus Joist MacMillan (together, "Weyerhaeuser") manufactured and Third-Party Defendant Permapost Products Co. ("Permapost") treated. Some of the columns and beams were installed on the exterior of the building, where they deteriorated, leading to damage to the structure. CBF, along with Plaintiffs Clark Construction Group, LLC f/k/a the Clark Construction Group, Inc. ("Clark") and SmithGroup, Inc. d/b/a KCF-SHG Inc. ("SmithGroup"), took remediation measures, and this litigation ensued to recover damages related to the deteriorated columns.

Extensive summary judgment briefing has established that genuine disputes exist about the proximate cause of the deterioration and whether Weyerhaeuser owed SmithGroup or CBF a non-contractual duty with regard to the columns and beams. But, it is apparent that Permapost

did not owe an independent tort duty to Weyerhaeuser, such that summary judgment is appropriate in favor of Permapost on the negligence claims asserted against it.  And, it is undisputed that Clark's and SmithGroup's contribution claims have not yet accrued and should be dismissed.  Additionally, the indemnification clause in the contract between Weyerhaeuser and Clark preempts Clark's common law indemnification claim, and summary judgment for Weyerhaeuser is appropriate on that claim.  It remains unclear, however, whether the remaining indemnification claims have accrued, and therefore Clark and SmithGroup are ordered to show cause why those claims should not be dismissed without prejudice to renewal at such time that they have made payments under the terms of their settlement agreement.  Thus, the pending summary judgment motions are granted in part and denied in part, as detailed below.  Finally, Permapost's motion to amend its Answer is denied for failure to show good cause.

## I.     BACKGROUND[1]

CBF contracted with SmithGroup to design the Philip Merrill Environmental Center (the "Merrill Center"), CBF's headquarters, on the Chesapeake Bay in Annapolis, Maryland. *Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, 580 F. App'x 203, 204 (4th Cir. 2014).  CBF also contracted with Clark as general contractor to oversee the construction, which spanned from 1999 into 2000.  *Id.*  "SmithGroup's 'green' design called for exposed structural wood members outside the envelope of the Merrill Center, including some that penetrated the building's façade." *Id.*  Weyerhaeuser, the manufacturer of Parallam PSL columns and beams ("Parallams"), agreed

---

[1] In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Unless otherwise stated, this background is composed of undisputed facts. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

in a purchase order "to provide [Parallams to Clark] for use as the exposed wood members"

("Clark–Weyerhaeuser Purchase Order"). *Id.*

> Parallams, which have a rough-hewn appearance, are manufactured by bonding together strips of wood. The wood strips' lack of uniformity creates channels, or "avenues," that run longitudinally through the Parallams. Thus, water is expected to infiltrate Parallams used outdoors. To protect against rotting, Parallams are pressure-treated with a wood preservative intended to fully penetrate the avenues. Its contract with Clark [i.e., the Clark–Weyerhaeuser Purchase Order] required Weyerhaeuser to treat the Merrill Center's Parallams with the preservative PolyClear 2000. Weyerhaeuser engaged third party defendant Permapost Products Co. ("Permapost") to apply the PolyClear 2000 treatment to a specified retention level, and Permapost provided certificates to Weyerhaeuser — later shared by Weyerhaeuser with the plaintiffs — verifying that such retention level had been reached.

*Id.* at 205.  However, for purposes of their pending motion for summary judgment, Permapost

states that "the Court may assume that Permapost did not appropriately treat the Parallams" and

"represented retention levels[2] were not retained."  Permapost's Mem. 5 & n.7.

Water leaked through the avenues in the Parallams into the Merrill Center after it was

finished, and Clark hired consultants to investigate the leaking in 2001 and 2002.  *Id.*  The

consultants stated that water in the avenues "could cause deterioration or rot in the Parallams

themselves if they were not properly treated with a wood preservative," but "Weyerhaeuser

assured the plaintiffs that the Merrill Center's Parallams had been properly treated with

PolyClear 2000 and were not at risk of premature deterioration."  *Id.*  Sealants stopped the leaks

in 2004.  Nonetheless, five years later, Plaintiffs discovered that the Parallams indeed had rotted

and deteriorated and "subsequently learned that the Parallams had not been treated with

PolyClear 2000 as certified, that PolyClear 2000 was not in any event well-suited to the job of

---

2  "Retention levels are the amount of preservative retained after treatment."  Permapost's Mem. 7 n.5.

preserving the Parallams, and that Weyerhaeuser had knowingly given false assurances to the contrary." *Id.*

CBF, SmithGroup and Clark entered into a settlement agreement to remediate the Merrill Center ("Remediation Agreement") by removing and replacing all of the Parallams used on the exterior of the facility and to seek reimbursement from Weyerhaeuser.  Compl. ¶¶ 49–50, ECF No. 2; *see* Remediation Agr., Def.'s Mem. re SmithGroup Ex. C, ECF No. 77-4.  To recover their costs, they filed suit in Maryland state court against Weyerhaeuser, which removed to this Court, Notice of Removal, ECF No. 1, and filed a Third-Party Complaint against Permapost, ECF No. 17.   Plaintiffs claimed breach of contract, including contractual indemnification, common law indemnification, contribution, negligent misrepresentation, and negligence against Weyerhaeuser, and Weyerhaeuser asserted the same five claims against Permapost.  Plaintiffs allege that the cause of the Parallams' rot or deterioration was either the selection of PolyClear 2000 as the treatment or the improper application of PolyClear 2000 to the Parallams.  Compl. ¶¶ 45, 46.  Weyerhaeuser moved for summary judgment on the basis that "Plaintiffs' claims are barred by the three-year statute of limitations contained in Maryland Code Annotated, Courts & Judicial Proceedings § 5-101."  ECF No. 61. The district court judge to whom this case was assigned agreed, and granted the motion, ECF No. 110, but the Fourth Circuit vacated and remanded, ECF No. 117, and the case was reassigned to me.

Pending are previously filed dispositive motions, ECF Nos. 76–79, 83-1, 84, 86, 87, 89, 90, 100, 103, as well as supplemental briefing that I permitted the parties to complete,  ECF Nos. 126, 135.  Now pending are:

1.  Permapost's Motion for Summary Judgment against Weyerhaeuser, ECF No. 76, and the related briefing, ECF Nos. 76-1, 132, 137, which includes Weyerhaeuser's Cross-Motion

for Partial Summary Judgment in ECF No. 132; as well as an Opposition from Plaintiffs, ECF No. 84, and Permapost's Reply, 94.

2. Weyerhaeuser's Motion for Summary Judgment against CBF, ECF No. 79, and the related briefing, ECF Nos. 90, 138;

3. Weyerhaeuser's Motion for Summary Judgment against SmithGroup, ECF No. 77, and the related briefing, ECF Nos. 86, 89, 138, 139;

4. Weyerhaeuser's Motion for Partial Summary Judgment against Clark, ECF No. 78, and Clark's Cross-Motion for Summary Judgment against Weyerhaeuser, ECF No. 87, and the related briefing, ECF Nos. 92, 100, 103, 138, 140; and

5. Permapost's Motion for Leave to File Amended Answer to Third Party Complaint, ECF No. 142, and the related briefing, ECF Nos. 143, 144.

A hearing is not necessary. *See* Loc. R. 105.6.

## II.     PERMAPOST'S MOTION FOR SUMMARY JUDGMENT

### A.      Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material

facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin, v. Baxter Healthcare Corp.*, 197 F. Supp. 2d 669, 671 (D. Md. 1999). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### B.    Proximate Cause

Permapost asserts that Weyerhaeuser must prove proximate cause to prevail on any of its claims. Permapost's Mem. 8 n.8. Indeed, "[p]roximate cause analysis applies in contract actions as well as tort actions." *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 196 n.41 (Md. 2012). And, as noted, all of Plaintiffs' claims against Weyerhaeuser, which form the basis for Weyerhaeuser's Third-Party Complaint, hinge on the allegation that the cause of the Parallams' rot or deterioration was either the improper selection of PolyClear 2000 as the treatment or the improper application of PolyClear 2000 to the Parallams. *See* Compl. ¶¶ 45, 46. Thus, Permapost argues that summary judgment in its favor is appropriate on all counts of Weyerhaeuser's Third-Party Complaint because, according to Permapost, its conceded failure (for summary judgment purposes only) to treat the Parallams properly with PolyClear 2000 was not the proximate cause of Plaintiffs' injury.[3]   Permapost's Mem. 5.   Weyerhaeuser adopts

---

[3] The parties agree, for purposes of Permapost's summary judgment motion only, that Permapost did not participate in the decision to use PolyClear 2000. *See* Permapost's Mem. 11 n.12; Weyerhaeuser's Opp'n to Sum. J. 2 n.1. Further, Permapost asserts that it was unaware that the Parallams were intended for exterior use. Permapost's Mem. 3 n.3; *see* Sept. 10, 2010 Mem. from Jayne Bond to Weyerhaeuser, Permapost's Mem. Ex. 3, ECF No. 76-2 ("As in most

Permapost's proximate cause argument as an alternative basis for judgment in its favor, against Plaintiffs, on "Plaintiffs' claims relating to improper treatment of the Parallams." Weyerhaeuser's Opp'n to Sum. J. 17.[4]  But it also counters that summary judgment is not appropriate on its Third Party Complaint because genuine disputes of material fact exist regarding whether the inadequate application of PolyClear 2000 to the Parallams was a proximate cause of Plaintiffs' (and consequently Weyerhaeuser's) injury.  *Id.* at 1–2.

To establish causation, a claimant must allege that the defendant's "negligence was 'both a cause in fact of the injury and a legally cognizable cause.'" *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 351 (D. Md. 2011) (quoting *Young v. United States,* 667 F. Supp. 2d 554, 561 (D. Md. 2009) (citing *Pittway Corp. v. Collins*, 409 Md. 218, 973 A.2d 771, 786 (2009))).[5]  It is causation in fact that Permapost insists cannot be proven.

> The "cause in fact" inquiry "concerns whether defendant's negligent conduct actually produced an injury." [*Young*, 667 F. Supp. 2d at 561.] Maryland courts consider two tests in determining whether causation-in-fact exists: the "but for" test and the substantial factor test. *Id.* at 562. The "but for" test considers whether the injury "would not have occurred absent defendant's negligent conduct." *Id.* The substantial factor test applies in situations where more than one independent negligent act may be responsible for a plaintiff's injury. *See id.* Under the substantial factor test, an action is viewed as the cause of an injury only if the action was a "'substantial factor' in bringing about plaintiff's injury." *Id.*

*Casey*, 823 F. Supp. 2d at 351.

---

treatment service cases, Permapost was unaware of the final end use of the materials.") Weyerhaeuser does not contest this assertion.

[4] Weyerhaeuser filed a Supplement to its Motions for Summary Judgment against Plaintiffs to incorporate this proximate cause argument.  ECF No. 138.  SmithGroup and Clark both opposed the Supplement.  ECF Nos. 139 & 140.  Insofar as Weyerhaeuser adopts Permapost's argument, that aspect of Weyerhaeuser's summary judgment motions against Plaintiffs is disposed of in this section.

[5] The parties agree that Maryland law applies.  *See* Permapost's Mem. 7 (applying Maryland law); Weyerhaeuser's Opp'n to Sum. J. 8, 13–14 (same).

Thus, Permapost's inadequate application of PolyClear 2000 will be the cause-in-fact of the Parallams rotting or deteriorating if the evidence shows that the Parallams would not have rotted or deteriorated "but for" the inadequate application, or if the evidence demonstrates that the inadequate application was a "substantial factor" in causing the Parallams to rot or deteriorate. *See id.* Stated differently, the issue is whether the Parallams would have rotted or deteriorated anyway even with a sufficient application of PolyClear 2000. Permapost insists that "[d]iscovery has established that . . . . [n]o matter how well (or poor[ly]) Permapost treated the Parallams, they were destined to fail, deteriorate and need to be replaced" as a result of "the decision to use (or failure to reject) PolyClear 2000 as the wood preservative." Permapost's Mem. 1.

Relying on the PolyClear 2000 Product Information and Specification Guide ("Guide"), Permapost contends that PolyClear 20000 was "intended <u>only</u> for wood that was 'weather protected' or used in 'interior applications.'" *Id.* at 3 (citing Guide, Permapost's Mem. Ex. 2, ECF No. 76-2). It is true that the Guide states that "[t]reatment with the PolyClear 2000 preservative system provides protection for wood intended to be used in interior applications, or weather-protected, exterior above-ground applications under conditions favoring insect attack and attack by wood-degrading fungi." Guide 2. Yet, the Guide also provides that if PolyClear 2000 "is specified to be used for exterior applications, it must be protected from the weather with a water-resistant coating." *Id.* It states that PolyClear 2000 "is not approved for ground contact applications," but it does not state that it is not approved for exterior applications. *See id.* Thus, the Guide does not support the premise that PolyClear 2000 categorically could not be used for exterior application, such that no amount of PolyClear 2000 could have been adequate to treat the exterior Parallams properly. Rather, it simply calls for the application of a water-resistant

coating for exterior use. *See id.* Indeed, Plaintiffs' expert, Peter E. Laks, Ph.D., observed that

Cetol, a "coating meant for exterior use to be applied to a variety of different wood products used

in exterior applications," was applied to the Parallams, and he opined that the application of

Cetol to the Parallams was not "inappropriate." Laks Dep. 84:15–85–7, Permapost's Mem. Ex.

7, ECF No. 76-2.

Although Plaintiffs' and Weyerhaeuser's wood science experts[6] agree that PolyClear

2000 was "the wrong choice" or "inappropriate," Laks Dep. 84:12–14, McIntyre Dep. 71:16–

72:10, Permapost's Mem. Ex. 8, ECF No. 76-2, this agreement is not tantamount to a declaration

that proper application of PolyClear 2000 could not have been effective. It is simply a consensus

that a better approach would have been to use a different sealant. As Dr. McIntry testified, when

asked directly whether it was "the wrong choice" to use PolyClear 2000: "There were other

choices that were better, in [his] opinion, that would have given more—a longer service life."

McIntrye Dep. 123:3–7. For example, Dr. Laks testified that the American Wood Protection

Association ("AWPA") standard for treating Parallam listed six different wood preservatives,

other than PolyClear 2000, as options. Laks Dep. 139:9–142:21. Yet, while he stated that

"PolyClear 2000 wasn't an AWPA approved product," *id.* at 81:8–10, he also noted that the

AWPA list was not exhaustive, and "[t]here could have been other materials that could have

been used," *id.* at 139:10–140:1.

Certainly, Dr. Laks testified that the Parallams were "degrading regardless of the amount

of PolyClear 2000 retained," Laks Dep. 76:14–77:2, and that, even with proper application, the

---

[6] Weyerhaeuser challenges the factual basis for some of Dr. Laks' opinions and contends that Plaintiffs' expert's and its own expert's statements were "taken out of context." Weyerhaeuser's Opp'n to Sum. J. 11. For purposes of this Memorandum Opinion, I assume that the statements of all of the experts are admissible under Fed. R. Evid. 702, and I have reviewed the deposition transcripts to consider their testimony in context.

Parallam only would have lasted "another few years before we would be seeing the condition were are seeing right now." *Id*. at 88:6–18. Likewise, Weyerhaeuser's expert, Craig R. McIntyre, Ph.D. testified that, if Permapost had treated the Parallams properly with PolyClear 2000, they would have lasted more than two years longer, although he could not predict how long "with any reasonable certainty." McIntyre Dep. 127:4–20. Similarly, Permapost's expert, Terry L. Amburgey, Ph.D., testified that, "if they had treated this thing with PolyClear 2000 as good as it could be treated, you would still have the problem we are seeing. It would just be delayed by a few years." Amburgey Dep. 102:10–13, Permapost's Mem. Ex. 9, ECF No. 76-2. Yet, Dr. Amburgey admitted that he did not "know how many years that would be delayed." *Id*. at 102:14–16. And, on the record before me, Dr. Laks did not address whether Cetol was applied properly after PolyClear 2000 was applied or whether that would have made a difference, that is, whether proper application of PolyClear 2000 could have been effective if followed by proper Cetol application.

Moreover, this testimony, if anything, could limit damages, but not liability. A reasonable jury could conclude, based on this testimony and documentary evidence, taken as a whole and in the light most favorable to Weyerhaeuser, that proper application of the PolyClear 2000 would have protected the Parallams from rotting and deteriorating for a longer time than they did. This means that it would be possible for a reasonable jury to find that the Parallams would not have rotted when they did but for Permapost's failure to treat them properly, or that Permapost's failure to treat the Parallams properly was a substantial factor in their deterioration, i.e., that Permapost's failure to treat the Parallams was the causation-in-fact of Plaintiffs' (and subsequently Weyerhaeuser's) injury. *See Casey*, 823 F. Supp. 2d at 351. Therefore, it is not undisputed that the Parallams would have rotted or deteriorated regardless of whether Permapost

had applied the PolyClear 2000 properly, and summary judgment in Permapost's favor is not appropriate on this basis.   *See* Fed. R. Civ. P. 56(a).   Additionally, with regard to Weyerhaeuser's adoption of Permapost's proximate cause argument, just as this genuine dispute of material fact makes summary judgment in Permapost's favor inappropriate, summary judgment in Weyerhaeuser's favor also is not appropriate on this claim.

### C.     Negligence Claims

Permapost argues that "Weyerhaeuser's negligence claims (Counts II and III) are not actionable torts" because "[i]n Maryland, the mere failure to perform a contractual duty is not an actionable tort," and "Permapost's duty and any liability arise[] solely from its contract with Weyerhaeuser."  Permapost's Mem. 18–19. Weyerhaeuser does not address this argument as to its negligence claim but, as demonstrated below, the outcome is the same for both the negligence and negligent misrepresentation claims.  With regard to its negligent misrepresentation claim, Weyerhaeuser insists that "[n]egligent misrepresentation and breach of contract are distinct causes of action with distinct elements and Maryland Courts allow Plaintiffs to proceed on each cause of action separately." Weyerhaeuser's Mem. 15–16.  Weyerhaeuser cites three cases, *University Nursing Home, Inc. v. R.B. Brown & Associates, Inc.*, 506 A.2d 268 (Md. Ct. Spec. App. 1986), *Aloi v. Moroso Inv. Partners, LLC*, No. DKC-11-2591, 2013 WL 6909151 (D. Md. Dec. 31, 2013), and *Weisman v. Connors*, 540 A.2d 783 (Md. 1988), in which breach of contract and negligent misrepresentation claims were permitted.  But none of these cases addresses the issue before me—whether a negligent misrepresentation claim may survive when the duty allegedly breached is a purely contractual duty.

Permapost cites case law that specifically holds that "'[u]nder Maryland law, "a claim for negligent misrepresentation is improper when . . . the only relationship between the parties is

contractual, both parties are sophisticated, and the contract does not create an express duty of due care in making representations.'"" Permapost's Reply 11 (quoting *CapitalSource Fin. LLC v. Pittsfield Weaving Co*., 571 F. Supp. 2d 668, 674 (D. Md. 2006) (quoting *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org*., 991 F.2d 94, 98 (4th Cir. 1992))).  Indeed, in *Martin Marietta*, which is binding on this Court, the Fourth Circuit agreed with the dismissal of negligence and negligent misrepresentation claims where the case did "not present circumstances in which the law create[d] a tort duty of due care independent from the parties' contractual relationship," noting that the aggrieved party was not "an unsophisticated consumer, unfamiliar with the subject matter of the contract, who relied on the representations of someone holding himself or herself out as possessing special expertise," and the parties did not have a relationship "of personal trust and confidence—such as  [with] a physician, an attorney, an architect or a public accountant."  991 F.2d at 98.  More recently, this Court has explained that

> "plaintiffs are generally precluded from bringing negligence actions to recover purely economic losses." *Potomac Constructors*, 530 F. Supp. 2d at 737. Indeed, "'[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.'" *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986) (quoting *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)); *see Donnelly v. Branch Banking & Trust Co.*, ---- F. Supp. 3d ----, 2015 WL 926022, (D. Md. Mar. 3, 2015) (citing *Jacques*). But, when an independent duty exists and there is an "intimate nexus," such as a contract, between the parties, tort liability arises from "the failure to exercise due care," even when only economic loss ensues. *Jacques*, 515 A.2d at 759–60.

*Pasternak & Fidis, P.C. v. Recall Total Information Mgmt., Inc.*, ---- F. Supp. 3d ----, 2015 WL 1405395, at *10 (D. Md. Mar. 25, 2015).

While Weyerhaeuser contends that "Permapost owed a duty to Weyerhaeuser (and Plaintiffs) that is independent of its contractual obligations," it identifies that duty as "a duty to alert Weyerhaeuser and Plaintiffs that none of the Parallams had been treated to the *contractual*

*specifications*." *Id*. at 16 (emphasis added). Thus, in Weyerhaeuser's own words, the duty is inextricably tied to the terms of the Weyerhaeuser–Permapost Contract. Additionally, Weyerhaeuser and Permapost are sophisticated businesses whose relationship was not one "of personal trust," and Weyerhaeuser is familiar with using PolyClear 2000 to treat wood. *Martin Marietta*, 991 F.2d at 98; *see* Amburgey Dep. 35:2–5 (noting that "Weyerhaeuser's literature" states that PolyClear 2000 should not be used to treat wood "for protection in exterior settings"). Because Weyerhaeuser has not demonstrated an "independent duty" to overcome the bar on claims for damages from negligent breach of contract, Permapost is entitled to judgment as matter of law on Counts II (Negligence) and III (Negligent Misrepresentation). *See Pasternak & Fidis*, 2015 WL 1405395, at *10; Fed. R. Civ. P. 56(a).

### III. WEYERHAEUSER'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PERMAPOST

Without identifying its Opposition as a cross-motion for partial summary judgment, Weyerhaeuser nonetheless asserts that it is entitled to summary judgment against Permapost on Count I (Breach of Contract). Weyerhaeuser's Opp'n to Sum. J. 8. According to Weyerhaeuser, it is "undisputed that Permapost did not treat the Parallams to the level specified in the agreement, required by the manufacturer or by industry standards," and the injury—rotting or deteriorating Parallams—was a foreseeable result of Permapost's breach. *Id.* Yet, as discussed previously, a claimant must prove proximate cause to recover in contract as well as in tort, *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 196 n.41 (Md. 2012), and foreseeability is only one aspect of causation, *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 351 (D. Md. 2011). The claimant also must prove causation in fact, *see Casey*, 832 F. Supp. 2d at 351, and as discussed previously, a genuine dispute exists as to whether Permapost's improper treatment of the Parallams was the causation in fact of Plaintiffs' and

Weyerhaeuser's injury.   Therefore, summary judgment in Weyerhaeuser's favor and against Permapost is not appropriate.  *See* Fed. R. Civ. P. 56(a).

## IV.   PERMAPOST'S MOTION FOR LEAVE TO AMEND

Permapost seeks leave to file an amended answer to Weyerhaeuser's Third Party Complaint to add as an affirmative defense the assertion that "the contract between Weyerhaeuser and Permapost provides that Permapost has no liability for indirect, special or consequential damages, among other limitations." Permapost's Mot. to Am. 1.  Permapost states that "[t]he language included in Permapost's amended answer comes directly from the 'Terms of Sale' found on Permapost's Acknowledgment of Order," i.e., the Weyerhaeuser–Permapost Contract.  *Id*. at 4.

Permapost analyzes its motion pursuant to Rule 15, which governs amendments to pleadings.  Weyerhaeuser counters that, because Permapost filed the motion after the deadline set in the Scheduling Order, the Rule 16(b) good cause standard applies, and Permapost fails to show good cause.  Weyerhaeuser's Opp'n to Mot. to Am. 2.  Weyerhaeuser is correct that Rule 16(b) applies.  When a party moves to amend after the deadline established in the scheduling order for doing so, the party "'first must satisfy the good cause standard of Rule 16(b)'" before the Court considers whether "'the movant . . . pass[es] the tests for amendment under [Rule] 15(a).'"   *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *3 (D. Md. July 24, 2012) (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003)); *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

The Scheduling Order set a deadline of March 18, 2011 for amending pleadings.  ECF No. 23.  Later revisions to the Scheduling Order did not modify that deadline.  *See* ECF Nos. 59, 126, 134.  Permapost filed its motion on November 18, 2014, over three and a half years after the

deadline passed.  Permapost insists that it "was not even a proper party to the case at the time the scheduling order was issued in this case," and "the deadline to amend pleadings expired only eight (8) days after Permapost timely filed its Answer."  Permapost's Reply re Mot. to Am. 2. Neither fact explains or excuses Permapost's delay.

Permapost also asserts that it received "voluminous new discovery concerning the claimed damages" on October 1, 2014, Permapost's Mot. to Am. 3, and that it did not review the Weyerhaeuser–Permapost Contract, which Permapost had destroyed as a seven-year-old business record years earlier, until Weyerhaeuser produced it in discovery.  Permapost's Reply re Mot. to Am. 3.  Had Permapost not received the Weyerhaeuser–Permapost Contract until October 2014, that could have been good cause for amending based on the Weyerhaeuser–Permapost Contract in November 2011.  But, Permapost also states that "once this document [the Weyerhaeuser– Permapost Contract], was disclosed, by Weyerhaeuser, Permapost quickly referenced this document in its written discovery responses and even noted that it would be relying on this document and the 'terms and conditions' detailed in the contract as part of its affirmative defenses."  Permapost's Reply re Mot. to Am. 3 (citing Permapost's Answers to Interrogs., Permaposts's Mot. to Am. Ex. 3, ECF No. 142-3; emphasis removed).  Those responses to Permapost's Interrogatories are dated August 19, 2011.  Permapost's receipt of the Weyerhaeuser–Permapost Contract in 2011 does not give it good cause for failing to amend before late 2014.  *See* Fed. R. Civ. P. 16(b).  In any event, amendment is not necessary because this so-called affirmative defense is based on a clause that is "'an integral part of the contract at issue,'" and therefore "'not subject to the pleading requirements of Rule 8(c).'"  *Core Commc'ns, Inc. v. Verizon Md. LLC*, 744 F.3d 310, 318, 321 (4th Cir. 2014) (quoting and affirming district court's ruling that exculpatory clause "was timely and appropriately invoked,"

despite its omission from the pleadings).   Accordingly, at trial, Permapost will be permitted to assert as a defense the contract language disclaiming indirect, special, or consequential damages with regard to Weyerhaeuser's Third-Party Complaint.   For the stated reasons, Permapost's Motion for Leave to File Amended Answer to Third Party Complaint is denied.

### V.     WEYERHAEUSER'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS

#### A.     Indemnification

Indemnification claims "allow a party who is held liable for an injury, but who was not primarily responsible for the injury, to shift liability to the party who was primarily culpable for the loss suffered by the plaintiff." *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 133 F. Supp. 2d 747, 771 (D. Md. 2001).   The right to indemnification may arise in contract or at common law, and an indemnity agreement may encompass not only the duty to indemnify, but also the broader duty to defend. *See Leite v. Severstal Sparrows Pt., LLC*, Nos. WDQ-09-742, WDQ-09-1158, 2010 WL 457513, at *2 (D. Md. Feb. 3, 2010); *Max's of Camden Yards v. A.C. Beverage*, 913 A.2d 654, 660 (Md. Ct. Spec. App. 2006) ("A duty to defend is separate from a duty to indemnify.   Generally, an alleged tortfeasor has no duty to defend another alleged tortfeasor.").   The duty to indemnify "covers liability incurred by the promisee," and the duty to defend "covers costs and expenses incurred in defending the suit and in enforcing the duties to indemnify and defend." *Leite*, 2010 WL 457513, at *2.   Here, Clark and SmithGroup claim that Weyerhaeuser breached its common law duty to indemnify, and Clark also claims that Weyerhaeuser breached its contractual duties to indemnify and to defend.

1.      *Clark's common law indemnification claim*

Weyerhaeuser insists that the indemnification clause[7] in the Clark–Weyerhaeuser Purchase Order preempts Clark's common law indemnification claim.  Def.'s Mot. re Clark ¶¶ 2–3.  Clark "agrees that it cannot seek recovery under a theory of common law indemnity for conduct that falls within the scope of a contractual indemnity clause."  Clark's Opp'n 18.  Nonetheless, Clark contends that "it is not appropriate to grant summary judgment in favor of Weyerhaeuser on Clark's common law indemnity claim at this time to the extent that certain conduct by Weyerhaeuser may fall outside the scope of the indemnity clause."  *Id.* Thus, the issue is whether a claim for indemnification could fall outside the scope of the indemnity clause.

When parties to a contract dispute the scope of an indemnification clause, "traditional rules of contract interpretation apply."  *Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture New Jersey, Inc.*, 739 F. Supp. 2d 821, 831 (D. Md. 2010) (citing *Ulico Cas. Co. v. Atl. Contracting & Material Co.*, 822 A.2d 1257, 1266 (Md. Ct. Spec. App. 2003)).

> Among these rules is the notion that "implied terms of a contract are utilized only in order to supply the place of a missing express term; therefore, where an express term exi[s]ts, it negatives an implied inconsistent term relating to the same aspect of the contract." *Myers v. Kayhoe*, 391 Md. 188, 199, 892 A.2d 520 (2006); *see also Ulico*, 150 Md. App. at 691, 822 A.2d 1257 ("When the surety and the principal have entered into an express indemnity agreement governing their rights, however, courts should not resort to implied indemnity principles to determine those rights."). Similarly, quasi-contractual remedies such as implied

---

[7] The indemnification clause provides:

> [Weyerhaeuser] shall indemnify and hold harmless [Clark] from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from [Weyerhaeuser's] performance under this Order, provided that such claims, damages, losses or expenses are attributable to . . . injury or destruction of tangible property including loss of use resulting therefrom but only to the extent cause in whole or in part by the negligent acts or omissions of [Weyerhaeuser], its lower-tier subcontractors or vendors. . . .

Clark–Weyerhaeuser Purchase Order Art. 4 & Ex. F, Compl. Ex. C, ECF No. 2-3.

indemnification are generally unavailable when a contract exists covering the same subject matter. *See Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96–98 & n. 8, 747 A.2d 600 (2000) (discussing rule that quasi-contractual remedies are unavailable in the face of an express contract); *Franklin v. Morrison,* 350 Md. 144, 154, 711 A.2d 177 (1998) (stating that implied indemnification is a quasi-contractual remedy).

*Nat'l Labor Coll.*, 739 F. Supp. 2d at 831.

In *National Labor College*, the Court found that "Defendant has a clear contractual duty to indemnify Plaintiff for specifically enumerated circumstances in the contract." *Id.* Reasoning that "[a]ny implied common law indemnification scheme would either contradict or add to the[] clearly defined circumstances in the contract," the Court concluded that the common law indemnity claim "would be incongruent with the express provisions" and dismissed it. *Id.* Here, also, the express contractual language defines Weyerhaeuser's duty to indemnify, and Clark cannot prevail on a claim for common law indemnification. Weyerhaeuser's motion for summary judgment is granted as to Count II, Clark's common law indemnification claim. *See id.*

2.     *Remaining indemnification claims*

Weyerhaeuser moves for summary judgment in its favor on SmithGroup's common law indemnification claim on the basis that SmithGroup has not shown that it was "legally liable in tort to CBF," because the evidence demonstrates that SmithGroup denied its liability in the Remediation Agreement. Def.'s Mem. re SmithGroup 10–11. Similarly, it argues that "to be entitled to indemnification, Clark must show, under its agreement with CBF, that it is liable *in tort* to CBF, and, that its negligence is due to Weyerhaeuser's negligent conduct." Def.'s Mem. re Clark 6. Clark counters that summary judgment is appropriate, but in *its* favor, not Weyerhaeuser's, "because the facts reveal no genuine dispute that Weyerhaeuser was obligated

to indemnify and hold Clark harmless, and that Weyerhaeuser declined to do so."  Clark's Opp'n 3.

Notably, an indemnitee can "claim indemnity from [the indemnitor] without again proving the fact of the basic liability" if the indemnitor "is given notice of the basic claim and invited to defend."  *Tillman v. Wheaton-Haven Recreational Ass'n*, 580 F.2d 1222, 1230 (4th Cir. 1978) (discussing *Jennings v. United States*, 374 F.2d 983, 986 (4th Cir. 1967)).   In *Jennings*, the Fourth Circuit held that notice of settlement negotiations, like notice of a pending action against an indemnitee, is necessary for a successful indemnity claim.  374 F.2d at 986.  It reasoned that a settling party's theory that "there was a strong possibility that the jury would have found [the indemnitee] liable" is not sufficient to bind an indemnitor to a settlement of which it had no notice, because "juries often return unanticipated verdicts which are nevertheless not subject to vacation by the trial court of the appellate court."  *Id.*  But, if an indemnitor chooses not to participate in settlement negotiations after receiving notice of them, the indemnitee "can recover all money paid under compulsion of a judgment entered against him."  *Id.*

The case law that Weyerhaeuser cites, requiring the indemnitee to establish the indemnitor's liability following a settlement, is from *Jennings*, in the district court and on appeal, but it is inapplicable to the circumstances of this case.  In *Jennings*, the district court used similar language in discussing cases that "support the Government's contention that, where there has been *no notice* and where there has been a settlement of the claim against the indemnitee, the indemnitee must prove its own actual liability in a subsequent action against the indemnitor."  *Jennings v. United States*, 251 F. Supp. 730, 733–34 (D. Md. 1966) (emphasis added).  Thus, the court noted that the proof-of-liability requirement applied only when the indemnitor did not

receive notice of settlement.  *See id.*  Further, the district court in *Jennings* was quoting dicta from *Frank Martz Coach Co. v. Hudson Bus Transp. Co.*, 44 A.2d 488 (N.J. Sup. Ct. 1945), in which the indemnitor likewise had no notice. 44 A.2d at 489.  The appellate court quoted the same language from *Frank Martz Coach Co.*, again noting that "there appears to have been no notice to the indemnitor" in that case.  *Jennings*, 374 F.2d at 987.  The Fourth Circuit concluded that "[t]he language in [*Frank Martz Coach Co.*] reinforces, rather than weakens, the view we think the more reasonable, namely that actual legal liability and not merely probable liability must be proved in the indemnity action *where the indemnitor has had no notice*."  *Id.* (emphasis added).

Here, according to SmithGroup, Weyerhaeuser had notice of Plaintiffs' settlement discussions, participated in mediation, had the opportunity to participate further, but chose not to and declined to enter into the Remediation Agreement.  SmithGroup's Opp'n 11.  SmithGroup has provided supporting evidence, *see id.* Exs. 24–26, ECF Nos. 86-25 – 86-27 (emails and minutes confirming Weyerhaeuser's attendance at settlement discussions), and Weyerhaeuser does not contend otherwise.  Likewise, Clark asserts that "CBF considered Clark responsible and liable for the improperly treated Parallams, and . . . Clark decided to settle rather than litigate those claims," and "Weyerhaeuser had ample notice and an opportunity to defend Clark and itself against those claims."  Clark's Opp'n 2.  Clark also has provided evidence in support of this contention.  *See* CBF Ltrs. to Clark, Clark's Opp'n Exs. 4, 6, ECF Nos. 87-4, 87-6 (holding Clark responsible and asking Clark to begin remediation); Clark Ltrs. to Weyerhaeuser, Clark's Opp'n Exs. 7, 8, ECF Nos. 87-7, 87-8 (seeking assurance of indemnification).  Weyerhaeuser acknowledges that "Clark sent letters in late 2009 to Weyerhaeuser requesting that Weyerhaeuser indemnify it against claims made by [CBF]," but "Weyerhaeuser declined, claiming that the

request was premature." Weyerhaeuser's Reply to Clark's Opp'n 2. Therefore, on the record before me, Plaintiffs need not prove "actual legal liability," and summary judgment would not be appropriate in Weyerhaeuser's favor on that ground. *See Jennings*, 374 F.2d at 986–87; *see also Tillman*, 580 F.2d at 1230.

Weyerhaeuser also contends that both Clark's contractual indemnification claim in Count I and SmithGroup's common law indemnification claim in Count II are premature "because payment has not been made on a claim of negligence." Def.'s Reply to Clark's Opp'n 5 n.1, 6–7; *see* Def.'s Mem. re SmithGroup 11. Indeed, under Maryland law, "a claim for indemnification is derivative, and does not arise, unless and until the party seeking indemnification has paid an adverse judgment or settlement." *Cofield v. Lead Indus. Ass'n*, No. MJG-99-3277, 2000 WL 34292681, at *8 (D. Md. Aug. 17, 2000) (citing *Read Drug v. Colwill Constr.,* 243 A.2d 548, 558 (Md. 1968)); *see S. Md. Oil Co. v. Texas Co.*, 203 F. Supp. 449, 452–53 (D. Md. 1962) ("[T]he rights both to indemnification and to contribution, whether based on contract or tort, accrue at the time of payment and not before."); *Leite*, 2010 WL 457513, at *2 (same).

Clark asserts that its indemnification claim encompasses allegations that Weyerhaeusuer breached both its duty to indemnify and its duty to defend. *See* Clark's Opp'n 10–11; Compl. ¶ 57. The duty to defend may arise before the duty to indemnify. *See Bd. of Trs., Comm. Coll. of Balt. Cnty. v. Patient First Corp.*, 98 A.3d 1072, 1082 (Md. Ct. Spec. App. 2014) ("'The duty to defend may be triggered by the pleadings, but the duty to indemnify is based on the jury's findings.'" (citation omitted)). Yet, here, Clark seeks monetary damages on its claim for breach of Weyerhaeuser's duty to defend. Specifically, Clark seeks "at least $3,000,000 or such greater amount as may be shown at trial, including costs associated with investigating the deterioration

of the Parallam members and determining the appropriate remedial measures, the cost to implement the remedial measures, plus Clark's attorney's fees and costs . . . ." Compl. 13. As discussed, such a claim does not mature until Clark incurs such costs. *See Cofield*, 2000 WL 34292681, at *8; *S. Md. Oil Co.*, 203 F. Supp. at 452–53.

Plaintiffs' Remediation Agreement provided that Clark would "endeavor to commence the Remedial Work on or before April 15, 2011, and to prosecute the work to completion in a diligent fashion," Remediation Agr. § 1(h); Plaintiffs expected the remedial work to take six to eight months, Compl. ¶ 50; and briefing of the motions regarding Plaintiffs' indemnification claims was complete on March 6, 2012, *see* ECF No. 103. Neither SmithGroup nor Clark alleged, let alone demonstrated through its opposition filings, that it had made any payment under the Remediation Agreement as of the time of their filings. Thus, SmithGroup and Clark may not have made payments when they submitted their filings, such that the indemnification claims had not accrued. Consequently, summary judgment in Clark's favor is not appropriate on the record before me. *See* Fed. R. Civ. P. 56(a). Rather, dismissal may be warranted. *See Cofield*, 2000 WL 34292681, at *8; *S. Md. Oil Co.*, 203 F. Supp. at 452–53.

I am aware, however, that more than three years have passed, and these claims may have accrued in the interim. Therefore, SmithGroup and Clark ARE ORDERED TO SHOW CAUSE by May 18, 2015 why SmithGroup's common law indemnification claim and Clark's contractual indemnification claim should not be dismissed without prejudice to renewal at such time that SmithGroup or Clark has made a payment pursuant to the Remediation Agreement. *See Cofield*, 2000 WL 34292681, at *8; *S. Md. Oil Co.*, 203 F. Supp. at 452–53.

**B.     Contribution**

Weyerhaeuser argues that SmithGroup and Clark's "claim for contribution cannot lie because it has not yet accrued." Def.'s Mem. re SmithGroup 11–12; *see* Def.'s Mem. re Clark 2, 7–8.   SmithGroup and Clark "acknowledge[] that [their] contribution claim lacks an adequate legal foundation" and do not object to its dismissal.   Clark's Opp'n 19; *see* SmithGroup Opp'n 11–12. Therefore, the contribution claim, Count III, is dismissed without prejudice.

**C.     Negligence Claims**

A duty owed to the claimant is an element of both the negligence and negligent misrepresentation claims.   *UBS Fin. Servs., Inc. v. Thompson*, 94 A.3d 176, 190–91 (Md. Ct. Spec. App. 2014).   Weyerhaeuser insists that it does not owe any duty to SmithGroup or CBF, because there was no "intimate nexus" between the parties, such that the negligence and negligent misrepresentation claims must fail.   Def.'s Mem. re SmithGroup 5–6; Def.'s Mem. re CBF 4–5. As noted, a party must show more than a "mere negligent breach of contract" to recover in tort for purely economic losses. *Jacques v. First Nat'l Bank of Md*., 515 A.2d 756, 759 (Md. 1986); *see Pasternak & Fidis, P.C. v. Recall Total Information Mgmt., Inc*., ---- F. Supp. 3d ----, 2015 WL 1405395, at *10 (D. Md. 2015).   A party must establish that an "intimate nexus" existed between it and the alleged tortfeasor and that the alleged tortfeasor owed it a duty beyond a contractual duty.   *See Jacques*, 515 A.2d at 759–60; *Pasternak & Fidis*, 2015 WL 1405395, at *10.   "This intimate nexus is satisfied by contractual privity or its equivalent." *Jacques*, 515 A.2d at 759–60.

CBF provides a "February 25, 2000 Letter Agreement," CBF's Opp'n Ex. 2, ECF No. 90-2, to "satisf[y] the intimate nexus requirement and establish[] that Weyerhaeuser owes a duty to CBF."   CBF's Opp'n 13–14.   The Letter Agreement, signed by CBF and Weyerhaeuser's

predecessor, Trus Joist, states that CBF will pay Trus Joist "for the costs [Trus Joist] ha[d] incurred . . . for engineering . . . and for intial costs incurred in fabrication," and that Trus Joist "will proceed with fabrication of the Parallam material . . . ." Ltr. Agr. 1. This Letter Agreement demonstrates an intimate nexus between Weyerhaeuser and CBF. *See Jacques*, 515 A.2d at 759–60.

SmithGroup insists that "[p]ursuant to the Terms and Conditions of its Purchase Order with Clark, Weyerhaeuser was duty-bound to *provide written notice of deviations* from the Contract Documents to the Architect." SmithGroup's Opp'n 17; *see id.* at 14. Indeed, the Clark–Weyerhaeuser Purchase Order states that Weyerhaeuser "shall not be relieved of responsibility for deviations from requirements of the Contract Documents . . . unless [Weyerhaeuser] has specifically informed the Architect in writing of such deviation at the time of submittal and the Architect has given written approval to the specific deviation." Clark–Weyerhaeuser Purchaser Order Ex. F. Under the circumstances of this case, the Clark–Weyerhaeuser Purchase Order between general contractor and supplier, which references Weyerhaeuser's obligations to SmithGroup as the architect, is equivalent to contractual privity and sufficient to create an intimate nexus between Weyerhaeuser and SmithGroup. *See Jacques*, 515 A.2d at 759–60.

The question remains whether Weyerhaeuser owed Plaintiffs a duty independent of that arising under the contracts among the parties. To determine this, the Court "examine[s] carefully the relationship that existed between these parties." *See Jacques*, 515 A.2d at 760. I noted earlier that the relationship between two businesses can be distinct from the relationship that an individual has with "a physician, an attorney, an architect or a public accountant," which is one "of personal trust and confidence." *Martin Marietta*, 991 F.2d at 98. But, where one party is "an

unsophisticated consumer, unfamiliar with the subject matter of the contract, who relied on the

representations of someone holding himself or herself out as possessing special expertise," such

a relationship arises.   *See id.*   Here, CBF contends that "Weyerhaeuser held itself out as

possessing particular knowledge regarding timber products, and used that reputation when it

supplied false information directly to both CBF, knowing and intending that CBF would rely on

it for its benefit and guidance, and Clark, knowing that Clark intended to supply it to CBF."   *Id*.

(footnote omitted).   According to CBF,

> Weyerhaeuser is a global leader in timber products.   It was the company that
> developed, manufactured, and brought Parallam to the market.   Weyerhaeuser
> employees were the industry experts, working with the American Wood-
> Preservers' Association (AWPA), that drafted the industry standards used for
> preservative treatment of wood products.   Weyerhaeuser employees prepared, and
> Weyerhaeuser published, extensive materials that described the various wood
> preservatives available for Weyerhaeuser products and the recommended
> applications for those products.

CBF's Opp'n 16 n.3.   Weyerhaeuser does not dispute these assertions, and CBF provides

exhibits that support its assertion of Weyerhaeuser's expertise.   *See* Clark–Weyerhaeuser

Purchase Order Ex. B, CBF's Opp'n Ex. 1, ECF No. 90-1 (noting Weyerhaeuser's "40 years of

experience in the engineered lumber business"); Sept. 11, 2009 Mtg. Minutes, CBF's Opp'n Ex.

18, ECF No. 90-18  ("CBF, Clark and Smith Group see Weyerhaeuser as the expert with respect

to Parallam . . . ."); Weyerhaeuser's Stains and Treatments Primer 1, CBF's Opp'n Ex. 25, ECF

No. 90-25 (describing itself as "a manufacturer and material supplier of structural wood

products" and "experts in their design and fabrication"); Weyerhaeuser's Preservative

Treatments web page, CBF's Opp'n Ex. 26, ECF No. 90-26; Weyerhaeuser's Design

Recommendations and Requirements for Use of Parallam® PSL in Heavy Timber Applications,

CBF's Opp'n Ex. 27, ECF No. 90-27.   Yet, in those same exhibits, Weyerhaeuser asserted that it

is "not, nor will [it] ever be, [an] expert[] on stains and treating processes and procedures."

Stains and Treatments Primer 1.  Consequently, on the record before me, I cannot conclude as a matter of law that Weyerhaeuser owed or did not owe a duty to Plaintiffs with regard to the condition of the Parallams it supplied under the contracts.  That dispute must be resolved by the jury.  Therefore, summary judgment is not appropriate on SmithGroup and CBF's claims for negligence and negligent misrepresentation.  *See* Fed. R. Civ. P. 56(a).

### D.   Attorney's Fees

According to Weyerhaeuser, Clark is not entitled to attorney's fees for breach of contract because "there is no clause in the contract that provides for an award of attorney's fees." Weyerhaeuser's Mem. re Clark 2.  Yet, the indemnification clause of the Clark–Weyerhaeuser Purchase Order provides that Weyerhaeuser "shall indemnify and hold harmless [Clark] from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from [Weyerhaeuser's] performance under this Order . . . ." Clark–Weyerhaeuser Purchase Order Art. 4 & Ex. F (emphasis added).  Therefore, summary judgment in Weyerhaeuser's favor is not appropriate with regard to Clark's entitlement to attorney's fees. *See* Fed. R. Civ. P. 56(a).

Weyerhaeuser also argues that SmithGroup is not entitled to attorney's fees because its indemnification claim has "no legal basis" and "the 'American Rule' . . . prohibits the recovery of attorney's fees as consequential or compensatory damages, absent a statute, rule, or contract to the contrary."  Weyerhaeuser's Mem. re SmithGroup 14–15.  Likewise, Weyerhaeuser contends that CBF is not entitled to attorney's fees under its negligence claims "[b]ecause there is no contract or statute that would allow such recovery under these claims."  Weyerhaeuser's Mem. re CBF 2.  Neither SmithGroup nor CBF addresses these arguments.  When the nonmoving party does not oppose a summary judgment motion, "those facts established by the motion" are

"uncontroverted." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Nonetheless, the moving party still must demonstrate that, based on those facts, that party is entitled to judgment as a matter of law, because "[t]he failure to respond to the motion does not automatically accomplish this." *Id.*

Weyerhaeuser cites *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 735 A.2d 1081, 1094 (Md. 1999), which states:

> Maryland follows the American rule which "stands as a barrier to the recovery, as consequential damages, of foreseeable counsel fees incurred in enforcing remedies for" breach of contract. Therefore, in the absence of a statute, rule or contract expressly allowing the recovery of attorneys' fees, a prevailing party in a lawsuit may not ordinarily recover attorneys' fees.

*Id.* (quoting *Collier v. MD-Individual Practice*, 607 A.2d 537, 542–43 (Md. 1992); citing *Hess Construction v. Bd. of Educ.*, 669 A.2d 1352, 1354 (Md. 1996)); *see Max's of Camden Yards v. A.C. Beverage*, 913 A.2d 654, 660 (Md. Ct. Spec. App. 2006) (concluding that, although "[t]he general rule is that, if an implied indemnity action lies, fees and costs are includible, . . . it is very doubtful, under Maryland law, whether and, if so, when attorney's fees and costs are recoverable in an implied indemnity action."). Given that SmithGroup and CBF have not identified a contract or statute entitling them to attorney's fees, and Weyerhaeuser has shown that case law bars such recovery with a relevant attorney's fees provision, summary judgment is appropriate in Weyerhaeuser's favor as to SmithGroup and CBF's claims for attorney's fees.

## VI.    CONCLUSION

In sum, the pending motions are disposed of as follows:

1.    Permapost's Motion for Summary Judgment on Weyerhaeuser's claims against it, ECF No. 76, IS DENIED as to the breach of contract, indemnity and contribution claims and GRANTED as to the negligent misrepresentation and negligence claims;

2.      Weyerhaeuser's Cross-Motion for Summary Judgment as to its breach of contract claim against Permapost, ECF No. 132, IS DENIED;

3.      Weyerhaeuser's Motion for Summary Judgment against SmithGroup, ECF No. 77, IS DENIED as to SmithGroup's negligent misrepresentation and negligence claims and GRANTED as to SmithGroup's entitlement to attorney's fees;

4.      Weyerhaeuser's Motion for Partial Summary Judgment against Clark, ECF No. 78, IS GRANTED as to Clark's common law indemnification claim but DENIED as to Clark's entitlement to attorney's fees;

5.      Weyerhaeuser's Motion for Summary Judgment against CBF, ECF No. 79, IS DENIED as to CBF's negligence and negligent misrepresentation claims and GRANTED as to CBF's entitlement to attorney's fees;

6.      Clark and SmithGroup's contribution claims are dismissed without prejudice;

7.      Weyerhaeuser's Motions for Summary Judgment against SmithGroup and Clark, ECF Nos. 77 and 78, ARE DENIED as to SmithGroup's common law indemnification claim and Clark's contractual indemnification claim;

8.      SmithGroup and Clark ARE ORDERED TO SHOW CAUSE by May 18, 2015 why SmithGroup's common law indemnification claim and Clark's contractual indemnification claim should not be dismissed without prejudice to renewal at such time that SmithGroup or Clark has made a payment pursuant to the Remediation Agreement;

9.      Clark's Cross-Motion for Summary Judgment as to its contractual indemnification claim, ECF No. 87, IS DENIED; and

     10.     Permapost's Motion for Leave to File Amended Answer to Third Party Complaint, ECF No. 142, IS DENIED.

     A separate order shall issue.

Dated: <u>May 4, 2015</u>                                       _____/S/_____

                                                 Paul W. Grimm
                                               United States District Judge

lyb